# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | Case No. 3:09CR358-HEH |
| ) | |
| ROBERT LEWIS WALKER, ) | |
| ) | |
| Defendant.  ) | |

## MEMORANDUM OPINION
### (Denying Defendant's Motion to Dismiss the Indictment)

This matter is before the Court on Defendant's Motion to Dismiss (Dk. No. 12), filed on March 23, 2010. In this Motion, the Defendant challenges the constitutionality of 18 U.S.C. § 922(g)(9), possession of a firearm by a person convicted of a misdemeanor crime of domestic violence, as applied to the indictment in this case. The parties have filed memoranda of law in support of their respective positions, and the Court heard oral argument on April 6, 2010. For the reasons given during the hearing and discussed below, Defendant's Motion will be denied.

## I. BACKGROUND

For the purposes of this Motion, the parties have stipulated to the facts contained in the Government's Opposition Brief. On November 12, 2008, officers from the Amelia County Sheriff's Office responded to a call for a domestic dispute at Defendant Robert L. Walker's ("Walker") residence. Upon arriving on the scene, officers found Debora Leneave ("Leneave"), Walker's live-in girlfriend, bleeding from the left side of her head.

Further investigation revealed that a verbal dispute between the couple had escalated to the point where Walker overturned a chair occupied by Leneave and then threw her against a wall. Relying on this information, the officers arrested Walker. Prior to this incident, Walker had been convicted three times for misdemeanor domestic assault and battery—twice in 1994, a third in 1997.

After Walker was placed in custody, an officer on the scene asked Leneave if there were any weapons in the house. Leneave led officers to Walker's bedroom and pulled from under the bed a carrying case containing an unloaded Remington, Model 1187, 12-gauge semi-automatic shotgun. Walker later waived his *Miranda* rights and claimed ownership of the shotgun. In a February 9, 2010 interview, Walker stated he received the shotgun as a gift from his father and had used the gun several times to hunt deer and dove. Walker was later charged in a one count Indictment in violation of 18 U.S.C. § 922(g)(9), for possession of a firearm by a person convicted of domestic violence. This Motion to Dismiss the Indictment followed.

## II. STANDARD OF REVIEW

This Court may, at any time during the pendency of a case, hear a claim that an indictment "fails to invoke the court's jurisdiction or to state an offense." Fed. R. Crim. P. 12(b)(3)(B). An indictment is defective if it alleges violation of an unconstitutional statute, or if the "allegations therein, even if true, would not state an offense." *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004); *see also In re Civil Rights Cases*,

109 U.S. 3, 8-9 (1883).

## III. ANALYSIS

### A. Statutory Framework

"The federal Gun Control Act of 1968, 18 U.S.C. § 921 *et seq.*, has long prohibited possession of a firearm by any person convicted of a felony." *United States v. Hayes*, 129 S. Ct. 1079, 1082 (2009). "In 1996, Congress extended the prohibition to include persons convicted of 'a misdemeanor crime of domestic violence.'" *Id.* (citing § 922(g)(9)). Congress recognized that "[e]xisting felon-in-possession laws . . . were not keeping firearms out of the hands of domestic abusers, because 'many people who engage in serious spousal or child abuse ultimately are not charged with or convicted of felonies.'" *Id.* (citing 142 Cong. Rec. 22985 (1996) (statement of Sen. Lautenberg)). "By extending the federal firearm prohibition to persons convicted of 'misdemeanor crime[s] of domestic violence,' proponents of § 922(g)(9) sought to 'close this dangerous loophole.'"[1] *Id.* (citing 142 Cong. Rec. 22986 (1996) (statement of Sen. Lautenberg)).

Therefore, § 922(g)(9) makes it "unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence . . . [to] possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(9). Section 921(a)(33)(A) defines a "misdemeanor crime of domestic violence" as an offense that

---

[1] Importantly, Congress noted that when domestic abusers are prosecuted, "one-third of the cases that would be considered felonies if committed by strangers are, instead, filed as misdemeanors." 142 Cong. Rec. S8831-06 (daily ed. July 25, 1996) (statement of Sen. Lautenberg).

3

"(1) has, as an element, the use [of force], and (2) is committed by a person who has a specified domestic relationship with the victim." *Hayes*, 129 S. Ct. at 1087.

B. Second Amendment

The Second Amendment provides that: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In the recent landmark decision of *District of Columbia v. Heller*, the Supreme Court held the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." 128 S. Ct. 2783, 2797 (2008). Applying this right, the Court held that the District of Columbia's ban on handgun possession in the home by law-abiding citizens violated the Second Amendment. *Id.* at 2797. Most importantly in *Heller*, however, the Court found that this individual right included a right to "self-defense," which it described as "the *central component* of the right itself." 128 S. Ct. at 2801. The Court labeled this "core right" as the right of "law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 2821. Despite these findings, the Supreme Court described this Second Amendment right as "not unlimited." *Id.* at 2816.

C. Constitutional Challenge to § 922(g)(9)

In this pending Motion, Walker contends the teachings of *Heller* make the enforcement of § 922(g)(9), as applied to the present charge against him, unconstitutional. Specifically, Walker argues that *Heller's* view of the Second Amendment, as an

4

individual right to possess firearms in case of confrontation, encompasses a fundamental right to possess firearms for hunting purposes. Walker maintains that because § 922(g)(9) limits his Second Amendment rights, the Government is required to show that this statutory prohibition withstands a strict scrutiny review.

In contrast, the Government argues that § 922(g)(9) does not violate the Second Amendment. By analogizing the list of presumptively valid firearm prohibitions named in *Heller* to the § 922(g)(9) prohibition, and alternatively, applying intermediate scrutiny, the Government claims the statute should be upheld as constitutional.

"In the wake of *Heller*, lower federal courts have employed two distinct tacks when faced with constitutional challenges to gun regulations under 18 U.S.C. § 922(g)." *United States v. Chester*, No. 09-4084, 2010 WL 675261 at *4 (4th Cir. Feb. 23, 2010). Many courts consider "a particular § 922(g) provision [as passing] muster constitutionally either because *Heller* specifically stated the particular regulations were constitutional, as regarding felons and the mentally ill, § 922(g)(1) and (4), or via analogy to the so called 'presumptively lawful regulations.'" *Id.* at *4 n.6. "Other federal courts have individually analyzed the specific statutory provision at issue, determined the appropriate level of constitutional scrutiny, and then scrutinized the statute in light of the factual circumstances before the court." *Id.* at *4. In the unpublished *Chester* opinion, the Fourth Circuit held that "it seems clear that cases that fall outside the specific exceptions in *Heller* warrant independent constitutional scrutiny." *Id.* Nevertheless, due to the non-

binding effect of unpublished opinions in this Circuit and the uncertainty over the proper analysis in other Circuits, this Court will apply both approaches.[2]

    1.    *§ 922(g)(9) is Analogous to the Presumptively Lawful Regulations Found In Heller*

In *Heller*, the Supreme Court held that the "longstanding prohibitions on the possession of firearms by felons and the mentally ill" were "presumptively lawful." 128 S. Ct. 2816-17. In footnote 26, the Court "identif[ied] these presumptively lawful regulatory measures only as examples" and did not intend for this list to be exhaustive. *Id.* at 2817 n.26. Relying on *Heller*'s presumptively lawful designation, numerous appellate courts, including the Fourth Circuit, have upheld convictions under § 922(g)(1) against constitutional challenge.[3] Likewise, although not specifically named in *Heller*, the Eleventh Circuit has argued by analogy that § 922(g)(9) is included on this presumptively lawful list.[4] *United States v. White*, 593 F.3d 1199, 1206 (11th Cir. 2010).

---

    [2] The non-binding nature of *Chester* is further weakened by its primary reliance on the vacated opinion of the *United States v. Skoien*, 587 F.3d 803 (7th Cir. 2009). By vacating this decision, the Seventh Circuit removed the sole appellate level case that addressed § 922(g)(9) through an independent constitutional scrutiny analysis.

    [3] *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009); *United States v. Anderson*, 559 F.3d 348, 352 n.6 (5th Cir. 2009); *United States v. Battle*, 347 Fed. App'x. 478, 479-80 (11th Cir. 2009); *United States v. Smith*, 329 Fed. App'x. 109, 110-11 (9th Cir. 2009); *United States v. Frazier*, 314 Fed. App'x. 801, 807 (6th Cir. 2008); *United States v. Irish*, 285 Fed. App'x. 326, 327 (8th Cir. 2008); *United States v. Brunson*, 292 Fed. App'x. 259, 261 (4th Cir. 2008).

    [4] In addition to *White*, other federal courts have upheld § 922(g)(9) via analogy to the presumptively lawful *Heller* exceptions for felons and the mentally ill. *See, e.g., United States v. Booker*, 570 F. Supp. 2d 161, 163-64 (D. Me. 2008); *United States v. Luedtke*, 589 F. Supp. 2d 1018, 1022-23 (E.D. Wis. 2008); *United States v. White*, No. 07-00361, 2008 WL 3211298, at *1

In *White*, the Court reasoned that if non-violent felons could lose their right to bear arms due to a conviction under § 922(g)(1), and Congress specifically passed §922(g)(9) to deal with the failure of felon-in-possession laws to keep firearms out of the hands of violent domestic abusers, they saw "no reason to exclude § 922(g)(9) from the list of long-standing prohibitions on which *Heller* does not cast doubt." *Id.*

By similar reasoning, the Government in this case maintains § 922(g)(9) falls within the category of presumptively lawful prohibitions. Given that Congress may prohibit those who commit non-violent felonies, like tax evasion or price fixing, from possessing a firearm, the Government insists they may equally prohibit those convicted of domestic violence from possessing firearms, where the risk of violence is much greater. Through this analogy argument, the Government contends that while *Heller* creates an individual right to keep and bear arms, a person may forfeit that right through the commission of such serious criminal conduct as violent domestic assault.

On the other hand, Walker calls this approach overly simplistic. Rejecting the presumptively lawful analogy approach as mere dicta, Walker insists the Fourth Circuit in *Chester* has already called for district courts to independently scrutinize all firearm prohibitions that fall outside those explicitly named in *Heller*.

Although acknowledging the guidance provided in *Chester* that rejects the "prohibition via analogy approach", this Court finds the Government's argument

---

(S.D. Ala. Aug. 6, 2008).

7

compelling. First, although considered dicta by Walker, the Fourth Circuit has held "carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative." *Wynne v. Town of Great Falls, South Carolina*, 376 F.3d 292, 298 n.3 (4th Cir. 2004) [internal quotations omitted]. Second, the *Heller* Court explicitly identified the presumptively lawful list as non-exhaustive. Third, and most importantly, due to the clear intent of Congress to close a "dangerous loophole" involving violent criminals, this Court finds the justification for the firearm prohibition found in § 922(g)(9) as persuasive as the prohibition found in § 922(g)(1). Therefore, § 922(g)(9) should be considered presumptively lawful and the statute may be constitutionally upheld on this basis alone.

   2.   *Independently Justified Approach to § 922(g)(9)*

Alternatively, this Court will independently analyze the constitutional underpinnings of § 922(g)(9). In *Chester*, the Fourth Circuit recommended that a Court begin its independent review "with historical analysis, determining that some gun laws will be valid because they regulate conduct that falls outside the terms of the right as publicly understood when the Bill of Rights was ratified. If the government can establish this, then the analysis need go no further." *Chester*, 2010 WL 675261, at *5 [internal citations omitted]. "For laws without the proper historical pedigree, however, the law will be valid (or not) depending on the government's ability to satisfy whatever level of means-end scrutiny is held to apply[.]" *Id.* [internal citations omitted]. "Although *Heller*

disclaimed any constitutional defect in some gun regulations, it refrained from identifying the proper standard of scrutiny for analyzing whether a statute infringes on Second Amendment rights."[5] *Id.* at *3 (citing *Heller*, 128 S.Ct. at 2821).

In the present case, Walker argues that *Heller* embraces the notion that the Second Amendment includes a fundamental right to possess firearms for hunting purposes. Since the Court has generally applied strict scrutiny in reviewing claims burdening fundamental rights, Walker urges the Court to adopt that analytical standard in this case. *See, e.g., Harper v. Virginia Bd. of Elections*, 383 U.S. 663 (1966).

The Government counters by presenting a detailed historical analysis of firearm prohibitions from the founding era. In this discussion, the Government explains the difficulty in comparing contemporary firearm regulations to those of the earlier period. As time evolved, the categorization of criminal offenses as felonies or misdemeanors varied widely. Also, the Government contends that because *Heller* never explicitly identified the Second Amendment right to possess a firearm as a fundamental right, intermediate scrutiny is the most appropriate standard for the Court to adopt.

Although *Chester* directs district courts to "consider and interpret the historical analysis from *Heller*," it is difficult to engage in such an analysis with respect to § 922(g)(9). As mentioned by the Government in their Opposition Brief, felonies during

---

[5] The Supreme Court did, however, reject rational basis review and Justice Breyer's "interest-balancing inquiry." *Heller*, 128 S.Ct. at 2817 n.27, 2821.

the founding era were typically punishable by death and imprisonment for such offenses was rare. *See, e.g., Apprendi v. New Jersey,* 530 U.S. 466, 480 n.7 (2000); *Tennessee v. Garner,* 471 U.S. 1, 13 (1985). In addition, many serious crimes, such as kidnapping and assault with intent to murder or rape, were classified as misdemeanors. *See, e.g., United States v. Watson,* 423 U.S. 411, 439-40 (1976). For these reasons, it would have made little sense for the Founders to consider the Second Amendment as exempting certain categories of people from possessing firearms based on the nature of their offense and length of incarceration as is done today. Such lack of classification criteria would render virtually meaningless any historical analysis of the validity of the § 922(g)(9) firearm prohibition. *Id.* at *5. Thus, we will assume § 922(g)(9) does not possess the appropriate historical pedigree and will move to the scrutiny prong of the analysis.

Initially, the Court must select the appropriate constitutional standard of scrutiny to independently review § 922(g)(9). Contrary to Walker's contention, this Court fails to find in *Heller* any significant justification for strict scrutiny analysis in situations involving possession of a firearm for hunting purposes. To the contrary, the *Heller* Court labeled the "core right" of the Second Amendment as the right of "law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller,* 128 S. Ct. at 2821. Because Walker cannot be considered "law-abiding," and his stated purpose for possession of the firearm is hunting rather then self-defense, he is at least several steps removed from the core constitutional right of the Second Amendment. We cannot say,

however, that the use of firearms for hunting purposes is entirely unprotected under the Second Amendment.[6] Thus, in the case at hand, where a person previously convicted of a misdemeanor crime of domestic violence invokes the Second Amendment to justify possession of a firearm for hunting purposes, an intermediate level of scrutiny appears more appropriate.

In applying this standard of review, the Court must determine whether the government has established that the statute in question is substantially related to an important governmental interest. *Clark v. Jeter*, 486 U.S. 456, 461 (1988). To achieve this goal, the government need only show a reasonable "fit between the legislature's ends and the means chosen to accomplish those ends . . . ."[7] *Fox*, 492 U.S. at 480 [internal citations omitted]. This "require[s] the governmental goal to be substantial, and the cost to be carefully calculated." *Id.* The government "bears the burden of justifying its restrictions, [and] it must affirmatively establish the reasonable fit" required. *Id.*

In examining § 922(g)(9) under an intermediate standard, this Court is required to

---

[6] In *Heller*, the Court in both the majority and dissent mentions a right to possess firearms for hunting purposes.

[7] The Supreme Court has applied different standards of intermediate scrutiny in evaluating laws that classify by gender, *United States v. Virginia*, 518 U.S. 515, 533 (1996), in the First Amendment free-speech context, *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008), and in the commercial-speech context, in *Bd. of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 480 (1989). As is applicable in our case, "the version of intermediate scrutiny articulated in *Fox* seems most appropriate here because *Skoien's* constitutional challenge does not implicate the core Second Amendment right of armed self-defense in *Heller*." *Skoien*, 587 F.3d at 814.

assess whether reducing domestic gun violence qualifies as an important governmental interest and whether there is a "reasonable fit" between the firearm prohibition and this governmental goal. As stipulated by the parties at the hearing and supported by Supreme Court case law, reducing domestic gun violence is an important governmental interest. *See United States v. Salerno*, 481 U.S. 739, 749 (1987) ("The government's interest in preventing crime . . . is both legitimate and compelling.").

Thus, the only inquiry we must make is whether § 922(g)(9) is a "reasonable fit" or reasonable remedy to reduce domestic gun violence as applied to Walker. Based on the facts in this case, this Court finds the Government has satisfied its burden. The firearm prohibition found in § 922(g)(9) specifically targets violent offenders, in clearly defined domestic relationships, and addresses a "dangerous loophole" identified by Congress. All these factors appear reasonable to prevent defendants, such as Walker, from using firearms in escalating domestic violence situations, similar to the November 12, 2008 assault at Walker's residence. Although Walker argues the prohibition's indefinite nature and lack of potential to restore his rights renders § 922(g)(9) unreasonable, intermediate scrutiny tolerates laws that are somewhat overinclusive.[8] *See, e.g., Fox*, 492 U.S. at 490;

---

[8] Despite Walker's contention that § 922(g)(9) is a permanent firearm prohibition, there exist several remedies that could potentially provide relief. 18 U.S.C. § 925(c) provides a mechanism by which a prohibited person may obtain relief from his disability by making application to the Attorney General. However, since 1992, Congress has not appropriated funding for the Bureau of Alcohol, Tobacco, and Firearms to process applications under § 925(c). Likewise, 18 U.S.C. § 921(a)(33)(B)(ii), provides that a conviction shall not be considered if expunged, civil rights have been restored, or the person has been pardoned.

*Anheuser-Busch, Inc. v. Schmoke*, 101 F.3d 325, 327-28 (4th Cir. 1996). For these reasons, this Court finds § 922(g)(9) passes intermediate scrutiny and therefore, Walker's Motion is denied.

## IV. CONCLUSION

This Court finds that 18 U.S.C. § 922(g)(9) is constitutional as applied to the indictment in this case. Therefore, Defendant's Motion to Dismiss the Indictment is denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: April 21, 2010

Richmond, VA